IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

BARRY S. CHRISTIANSON,

                    Plaintiff,                    OPINION AND ORDER

      v.                                   3:07-cv-00485-bbc

MICHAEL ASTRUE,
Commissioner of Social Security,

                    Defendant.

---

This is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Barry Christianson seeks

reversal of the commissioner's decision that he is not disabled and therefore is ineligible for

Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C.

§§ 416(i) and 423(d).  Having considered plaintiff's various challenges to that decision, I am

satisfied that substantial evidence supports the commissioner's decision.  The administrative

law judge carefully considered all of the relevant evidence and articulated sound reasons for

rejecting the evidence in plaintiff's favor, including the opinion of plaintiff's treating

physician.  As for his conclusion that a substantial number of jobs exist that plaintiff can

perform, the administrative law judge properly relied on the testimony of the vocational

expert.  Plaintiff's attacks on that testimony are mostly unfounded.  Accordingly, the commissioner's decision will be affirmed.

From the administrative record, I find the following facts.

## I.  FACTS

### A.  <u>Background</u>

Plaintiff was born on February 15, 1962.  He was 44 years old on the date of the administrative law judge's decision, making him a "younger person" under the commissioner's regulations.  20 C.F.R. § 404.1563(c).  He has a high school education and past relevant work experience as a delivery driver for United Parcel Service.

### B.  <u>Medical Evidence</u>

Plaintiff began having problems with his lower back in the early 1990s.  Radiographic studies showed that plaintiff had spondylolisthesis, a condition in which a vertebra slips forward and onto a bone below it, at the L5-S1 level.  In spite of his back pain, plaintiff continued to work as a package delivery driver.

Plaintiff's neck problems began in September 2000.  He was driving an older, substitute vehicle at work and began having neck and back pain after driving over a bump in the road.  He was treated by his family physician, Dr. Stoughton, and by a chiropractor,

2

but his symptoms persisted.  Eventually, a magnetic resonance imaging scan was ordered. The studies showed spondylolisthesis of plaintiff's spine at L5-S1, an annular disk bulge at L4-L5, a protruding disk at C5-C6 and a moderate protruding disk at C6-C7.  In mid-January 2001, plaintiff's doctors recommended that he take some time off from work. Plaintiff did so and has never returned to the work force.  He filed his first application for disability insurance benefits in July 2001.  (That application was denied on May 2, 2003 and is not a subject of this appeal.)

On April 8, 2002, plaintiff underwent a functional capacities evaluation.  The results of the evaluation indicated that plaintiff was able to perform sedentary work that allowed him to change positions at will from sitting to standing and that required no stooping, twisting or reaching overhead.  According to the physical therapist who administered the test, plaintiff was willing to try all of the activities and appeared to give good effort during the course of the evaluation.  However, he limited his activity because of pain or fear that he was going to exacerbate his pain.

On May 29, 2003, Dr. Stoughton wrote a letter criticizing the decision of an administrative law judge who had denied plaintiff's July 2001 application for disability insurance benefits.  Dr. Stoughton stated his opinion that the limitations documented in the functional capacities evaluation should be used as a basis for determining disability.  Dr. Stoughton explained that those limitations had been endorsed by plaintiff's doctor, Dr.

3

Bodeau, whose opinion had been accorded great weight by the administrative law judge.  AR 210.

On April 6, 2004, plaintiff was evaluated by Dr. Michael Ebersold, a neurosurgeon. Plaintiff's primary complaint was pain in the left side of his neck and associated left arm pain and numbness.  On examination, plaintiff had normal strength and reflexes in the upper and lower extremities and no weakness in any particular area.  Plaintiff had increased neck and arm pain when he extended his neck or bent it to the left, but no specific finger numbness.  Dr. Ebersold reviewed a recent CT scan of plaintiff's neck, which showed narrowing of the C6 foramen on the left side.  However, he found no objective evidence that the nerve at C6 was being impinged.  In light of the absence of objective findings to go along with the foraminal narrowing, Dr. Ebersold told plaintiff that surgery was not likely to be successful.

On June 30, 2004, plaintiff saw Dr. Stoughton for complaints of worsening lower back pain.  Plaintiff's range of motion in his back was limited and he had tenderness on the right.  Straight leg raising test was negative, his reflexes were brisk and symmetric and he had normal strength and sensation in his legs.  Dr. Stoughton prescribed hydrocodone and recommended that plaintiff see his chiropractor.  On July 16, plaintiff reported that the hydrocodone had not helped his pain.  Dr. Stoughton changed plaintiff's prescription to

4

percocet, but that medication either did not help or produced bad side effects. On November 2, 2004, Dr. Stoughton changed plaintiff's prescription to trazadone.

On March 15, 2005, plaintiff saw Dr. Stoughton so he could complete forms on plaintiff's behalf for continued disability and to certify that he was healthy enough to be a foster parent. Plaintiff told Dr. Stoughton that he continued to have considerable back pain depending on his activities during the day. He said that he also had intermittent neck pain and shooting pain from his neck down his left arm, particularly when he extended his neck. Plaintiff reported getting no relief from over-the-counter pain medications such as ibuprofen or acetaminophen. He took trazadone on occasion to help him sleep. On examination, Dr. Stoughton detected no tenderness in the back of plaintiff's neck. Plaintiff's ability to rotate or extend his neck was limited because of pain and stiffness, but he was capable of full forward flexion. Plaintiff was similarly limited in his ability to flex and extend his back. However, he had normal strength and sensation in his extremities and normal reflexes. Dr. Stoughton recommended a trial of MS Contin. He completed forms indicating that plaintiff was fit to be a foster parent and was permanently disabled from his job.

Plaintiff saw Dr. Stoughton on October 18, 2005, stating that United Parcel Service wanted to settle his worker's compensation case. He reported that he still had low back pain that radiated down into his left buttock and down into the back of his left leg, with associated numbness and tingling in the left leg if he stayed in one position for too long. He

5

said he had to change positions frequently from sitting to standing or lying down.  MS Contin had made him drowsy and did not provide much pain relief.  Plaintiff said that chiropractic treatments had helped somewhat, but he had not been able to see his chiropractor lately.   On physical examination, Dr. Stoughton  detected no palpable tenderness in plaintiff's back.  Plaintiff had slightly decreased sensation to soft touch along the side of the foot, the front and back of the shin and along the calf.  Foot and leg flexion and extension were slightly decreased on the left as compared to the right.

Dr. Stoughton wrote a "To Whom It May Concern" letter stating that in his opinion, it would be difficult for plaintiff to return to his former job at United Parcel Service with his current symptoms.  Dr. Stoughton indicated that on the basis of examination and plaintiff's subjective symptoms, plaintiff had chronic back pain with radiating symptoms down his left leg.  He stated that plaintiff would be a "poor candidate" for rehabilitation, insofar as his need to shift positions and lie down periodically would prevent him from sitting in a classroom.   Dr. Stoughton also indicated that narcotic pain medications would be too sedating.  AR 292.

C.  Administrative Proceedings

Plaintiff applied for disability insurance benefits on August 17, 2004.  He alleged that he had been disabled since March 2003 because of back and neck problems, uncontrollable

bowel, numbness and tingling in his arms and legs and irritability.  As part of that application, plaintiff provided information about his daily activities.  Plaintiff reported that his typical day consisted of seeing his children off to school, performing occasional errands, reading, watching television and "just putz[ing]."  He said he could drive a car and ride a bike a very short distance.  Plaintiff accompanied his wife at times to shop for groceries or other supplies, visited his wife at work, attended his kids' school activities and visited occasionally with people he saw when he was out.  AR 128-135.

On October 29, 2004, a consulting physician for the local disability agency reviewed plaintiff's medical records and concluded that plaintiff was capable of performing the full range of work at the sedentary exertional level.  On February 25, 2005, a second state agency physician reached the same conclusion.

After two denials by the local disability agency, plaintiff requested a *de novo* hearing before an administrative law judge.  A hearing was convened on November 7, 2006.  Plaintiff appeared with a non-attorney representative.

Plaintiff testified that he was unable to work because he could not sit or stand in one position for long, had trouble concentrating because of pain and had days when he could not get out of bed.  He said that he could not perform any job that required him to look down because doing so would cause pain to radiate down his arm and "blackout type symptoms."  He said he had a lot of pain in his right arm and numbness in his left hand.  Plaintiff

testified that his doctors told him that he is a candidate for surgery on both his back and neck.

The administrative law judge called Dr. Andrew Steiner to testify as a neutral medical expert.  Dr. Steiner testified that plaintiff's impairments consisted of degenerative disc disease in the lumbar spine, Grade 2 spondylolisthesis at L5-S1, degenerative disc disease in the neck at two levels and some evidence of neuroforaminal stenosis at C6 on the left. Dr. Steiner testified that because none of these objective changes were associated with any objective evidence of neurological compromise such as loss of strength, sensation or reflexes, plaintiff did not have an impairment that met or equaled the criteria of any impairment listed in 20 C.F.R., Subpart P, Appendix 1.  In Dr. Steiner's opinion, plaintiff's impairments would limit him to sedentary work (lifting 10 pounds occasionally and five pounds frequently) that required no more than occasional overhead work, bending, twisting, stooping, kneeling, crawling, crouching, climbing ladders or climbing stairs.  He added that plaintiff might also need the ability to change positions briefly on an hourly basis.  Dr. Steiner saw nothing in the medical records documenting any problems with neck flexion.

Steven Bosch testified as a neutral vocational expert.  Bosch testified that a person of plaintiff's age and education, who had the limitations identified by Dr. Steiner plus the additional limitation of no work at unprotected heights or around dangerous machinery, would be unable to perform plaintiff's past work as a delivery driver.  He testified, however,

8

that such a person could perform a number of jobs in Wisconsin, including security monitor (1,000 jobs), production work such as optical assembly (2,000 jobs), information clerk (1,500 jobs) and electronic assembly work such as semi-conductor bonder (4,000 jobs). Bosch testified that he had drawn the information about the exertional and skill levels of the jobs from information provided in the Dictionary of Occupational Titles, but that his opinion about how many of those jobs allowed for a brief hourly change of position was drawn from his experience.  Bosch testified that if the individual could look down only occasionally, virtually all sedentary production jobs would be eliminated.

On January 21, 2007, the administrative law judge issued a decision finding plaintiff not disabled.  Applying the familiar five-step sequential evaluation process for disability claims, 20 C.F.R. § 404.1520(a)(4), the administrative law judge found that plaintiff had not engaged in substantial gainful activity after his alleged onset date (step one); he had the severe impairments of degenerative lumbar disc disease with Grade II spondylolisthesis and degenerative cervical disc disease (step two); plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment (step three); plaintiff was unable to perform his past relevant work as a delivery driver (step four); and plaintiff was able to make a vocational adjustment to work existing in significant numbers in the national economy, including security monitor, optical assembler, information clerk and semi-conductor bonder (step five).

9

As part of his step four evaluation, the administrative law judge made a determination of plaintiff's "residual functional capacity," that is, the job functions that plaintiff was able to perform.  20 C.F.R. § 404.1545 ("Your residual functional capacity is the most you can still do despite your limitations").  Assigning significant weight to the opinion of Dr. Steiner, the administrative law judge found that plaintiff retained the residual functional capacity to perform a sedentary level of work (involving occasionally lifting up to ten pounds, frequently lifting up to five pounds, sitting for six hours in an eight hour workday and standing for one to two hours in an eight-hour workday) with these additional restrictions:  no more than occasional stair climbing, bending, balancing, stooping, crouching, kneeling or crawling; no repetitious overhead work; no work at unprotected heights or around dangerous moving machinery; and the ability to change positions briefly on an hourly basis.  The administrative law judge explained that Dr. Steiner's opinion was "fully supported by the weight of the evidence of record" and was consistent with those offered by the state agency consulting physicians.  The administrative law judge pointed out that although radiographic studies had documented abnormalities in plaintiff's lumbar and cervical spine, plaintiff's doctors had not found any objective evidence suggesting a loss of any associated neurological function.  He noted that plaintiff's spondylolisthesis had progressed over the years from Grade I to Grade II, but there was no evidence of instability at the joint with movement.

The administrative law judge found incredible plaintiff's claim that he was incapable of performing any work activity.  He explained that plaintiff's subjective complaints were inconsistent with significant evidence in the record, which included:

- The objective medical evidence;

- Plaintiff's relatively wide array of daily activities, which included seeing that his children got off to school on time, performing occasional errands, grocery shopping, assisting with housework, paying bills, going to lunch with his wife and attending his children's sporting events;

- His conservative course of treatment, which consisted solely of medication and chiropractic services;

- Plaintiff's failure to seek any treatment for his alleged symptoms of incontinence, near black-outs and psychological issues;

- The effectiveness of non-narcotic pain medication to treat his pain; and

- Plaintiff's pending worker's compensation claim, which suggested that plaintiff might have been motivated by secondary gain.

The administrative law judge declined to give significant weight to the opinion of Dr. Stoughton, noting that it was founded largely on plaintiff's subjective complaints and was not supported by clinical findings.  He explained that Dr. Stoughton's clinical notes showed that plaintiff had normal neurological and sensory examinations, normal muscle tone and normal muscle strength in both upper and lower extremities.

The administrative law judge also discounted the results of the August 2002 functional capacities evaluation.  In his view, the assessment did not truly reflect plaintiff's

11

abilities because plaintiff had limited himself and because more recent clinical records did not document findings supporting the limitations found during that assessment.

Relying on the testimony of the vocational expert, the administrative law judge found at step four that plaintiff was unable to perform his past relevant work as a delivery driver. He found, however, that plaintiff would be able to perform a significant number of jobs in the national economy. Relying again on Bosch's testimony, the administrative law judge found that plaintiff would be able to perform the jobs of security monitor, optical assembler, information clerk and semi-conductor bonder. Citing Social Security Ruling 00-4p, the administrative law judge explained that to the extent Bosch's testimony deviated from the Dictionary of Occupational Titles, he was placing greater weight on Bosch's opinion because of his educational background and experience.

## II. OPINION

### A.  Standard of Review

Unless the commissioner has committed an error of law, his determination that plaintiff was not disabled for purposes of receiving Social Security benefits is conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

401 (1971).  In reviewing the commissioner's decision, the court conducts "a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the commissioner's decision.  <u>Clifford</u>, 227 F.3d at 869.  However, the court cannot substitute its own judgment for that of the commissioner by reevaluating the facts or reweighing the evidence to decide whether the plaintiff is in fact disabled.  <u>Diaz v. Chater</u>, 55 F.3d 300, 305 (7th Cir. 1995).

## B. <u>Residual Functional Capacity Assessment</u>

Plaintiff makes a number of arguments in support of his contention that the administrative law judge erred in assessing his residual functional capacity.  Several of these arguments rest on troubling misrepresentations about the record.  For example, plaintiff asserts that Dr. Stoughton's notes are "replete" with findings showing that he was unable to perform constant neck flexion, a limitation that would prevent him from performing any of the sedentary production jobs upon which the administrative law judge relied in making his step five determination.  However, none of the records to which plaintiff cites supports any limitation on neck flexion. To the contrary, when Dr. Stoughton observed plaintiff's neck flexion, he found that it was "normal," AR 289, or "full," AR 296.

Also unfounded is plaintiff's contention that Dr. Stoughton's statements about plaintiff's various physical limitations were drawn from the April 2002 functional capacities

evaluation.  Although Dr. Stoughton wrote a letter in May 2003 stating his opinion that those limitations should be used a basis for determining disability because they had been endorsed by a different treating physician, there is no indication that Dr. Stoughton's later statements about plaintiff's limitations were drawn from that assessment.  Furthermore, contrary to plaintiff's assertion, Dr. Bodeau, not Dr. Stoughton, ordered that assessment.

Plaintiff also argues that the administrative law judge erred in making the implicit finding that plaintiff is capable of performing unskilled work.  Plaintiff contends that he cannot perform such work because of the fatigue caused by his medications.  Again, the record refutes plaintiff's argument.  Although it is true that plaintiff complained to his doctor that narcotic medications made him tired, the record shows that plaintiff stopped taking these medications in favor of non-narcotic medications.  There is simply no support in the record for plaintiff's claim that he takes medications that cause drowsiness so severe as to interfere with his ability to perform unskilled work.

Turning then to the arguments that have at least some merit, plaintiff challenges the administrative law judge's decision to give more weight to the opinion of Dr. Steiner than to that of Dr. Stoughton, contending that in doing so, the administrative law judge violated the "treating physician rule."  But the opinion of a treating physician is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ".  20

14

C.F.R. § 404.1527(d)(2).  Dr. Stoughton's opinion did not satisfy either of these criteria.

It is well settled that an administrative law judge may properly disregard a medical opinion

when it is premised on the claimant's self-reported symptoms and the administrative law

judge has reasons to doubt the claimant's credibility.  See, e.g., Rice v. Barnhart, 384 F.3d

363, 371 (7th Cir. 2004) ("medical opinions upon which an ALJ should rely need to be

based on objective observations and not amount merely to a recitation of a claimant's

subjective complaints"); Diaz, 55 F.3d at 307 (administrative law judge could properly reject

portion of physician's report that was based upon plaintiff's own statements of functional

restrictions where administrative law judge properly found that plaintiff's subjective

statements were not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001)

(affirming administrative law judge's disregard of treating physician's opinion because

opinion "was based largely upon the claimant's self-reported symptoms" and was not

supported by objective medical evidence); Morgan v. Commissioner of the Social Security

Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability

premised to large extent upon claimant's own accounts of symptoms and limitations may be

disregarded where those complaints have been properly discounted).  As explained by the

administrative law judge, Dr. Stoughton's opinion was founded largely on plaintiff's

subjective complaints rather than on any clinical techniques, and plaintiff's complaints were

not entirely credible in light of his relatively wide array of daily activities, conservative course

of treatment, failure to seek any treatment for his several of his alleged symptoms and the effectiveness of non-narcotic pain medication to treat his pain.

Plaintiff disputes the propriety of the administrative law judge's credibility determination, but I am satisfied that it was both reasonable and supported by the evidence. Sims v. Barnhart, 442 F. 3d 536, 538 (7th Cir. 2006) (court may reverse credibility finding only if unreasonable or unsupported).  Plaintiff's arguments amount to little more than a disagreement about how the administrative law judge weighed the evidence, which is not a strong argument to make on a Social Security appeal.  Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003) (reviewing court "is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility") (citations omitted).  Reasonable people reviewing this record could agree that plaintiff's lifestyle was fairly active, his treatment regime conservative and his overall credibility suspect in light of his failure to seek treatment for some of his alleged severe symptoms.  As for plaintiff's use of pain medication, the administrative law judge acknowledged that plaintiff experienced fatigue with the use of narcotics, but he found from plaintiff's continued use of non-narcotic medication that these kinds of medications provided at least some measure of pain relief.  This too was a reasonable finding that is adequately grounded in the evidence.

16

Circling back to Dr. Stoughton's opinion, plaintiff disputes the administrative law judge's finding that the opinion was not well-supported by clinical findings.  As objective support for Dr. Stoughton's opinion, plaintiff points to the documented spondylolisthesis and other degenerative changes in his spine and to clinical examinations documenting his limited range of motion in his spine and neck.  To establish entitlement to social security benefits, however, a claimant must show not only that he has impairments but also that those impairments render him incapable of performing any substantial gainful activity.  Barnhart v. Walton, 535 U.S. 212, 217 (2002).  In this case, the administrative law judge specifically found that plaintiff had grade II spondylolisthesis and degenerative disc disease and that plaintiff had significant limitations as a result of these impairments.  What he did not accept was Dr. Stoughton's opinion that these impairments posed limitations so substantial that they would prevent plaintiff from performing all work activity.  In this regard, the administrative law judge properly noted the absence of abnormal clinical findings that would support such extreme functional limitations, such as muscle weakness, sensory loss or reflex loss.  The lack of such findings was a good reason for rejecting Dr. Stoughton's opinion.

Plaintiff also contends that it was error for the administrative law judge to reject Dr. Stoughton's opinion merely because Dr. Steiner disagreed with it.  Oakes v. Astrue, 2007 WL 4455436, *7 (7th Cir. Dec. 20, 2007) ("'[A] contradictory opinion of a non-examining

physician does not, by itself, suffice' to provide the evidence necessary to reject a treating physician's opinion") (quoting Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003)).  But that is not what the administrative law judge did.  Instead, the administrative law judge evaluated the record as a whole and explained why Dr. Stoughton's opinion was not consistent with the medical and other evidence.  An administrative law judge may reject a treating physician's opinion if it is contradicted by other evidence in the record and the administrative law judge provides good reasons for rejecting the opinion.  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  Here, those reasons were that plaintiff exhibited very few abnormalities during clinical examinations and Dr. Stoughton's description of plaintiff's limitations was essentially a recitation of plaintiff's subjective complaints, which were not credible.  Because those were legitimate reasons for rejecting Dr. Stoughton's opinion, remand is not warranted.


## C.  Step Five Determination

At the hearing, the vocational expert identified four examples of jobs that an individual with plaintiff's vocational factors and residual functional capacity could perform, citing a corresponding number from the Dictionary of Occupational Titles for each job.  Although plaintiff did not challenge this testimony at the hearing, he now contends that some of the numbers cited by the vocational expert do not correspond to the jobs he cited,

and furthermore, that the jobs identified exceed either plaintiff's exertional ability or skill level.

It is unnecessary to decide whether plaintiff, who was represented by a non-lawyer at the hearing, forfeited his right to challenge the adequacy or accuracy of the vocational expert's testimony by failing to do so at the hearing.  Even considering the objections plaintiff now raises to that testimony, they fail to destroy the evidentiary foundation for the administrative law judge's step five determination.  Plaintiff admits that two of the jobs identified by the vocational expert, "final assembler" in the optical industry and semi-conductor bonder, are sedentary, unskilled jobs.  (I will assume for the purposes of this decision that plaintiff lacks the skill necessary to perform the job of information clerk or security monitor.)  He argues that he cannot perform these jobs because they require frequent overhead work, a requirement precluded by the administrative law judge's hypothetical.  However, nothing in the <u>Dictionary of Occupational Titles</u> supports his position.  Plaintiff equates "reaching" with overhead work, but the terms are not necessarily equivalent.  Indeed, the written job descriptions for final assembler and semi-conductor bonder defeat plaintiff's unsupported contention that both jobs require more than occasional overhead work.  According to the <u>Dictionary of Occupational Titles</u>, a final assembler:

> Attaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes.  Inserts and tightens screws, using screwdriver.

19

The tasks of a semi-conductor bonder include the following:

> Tends automatic bonding machine that bonds gold or aluminum wire to integrated circuit dies to connect circuitry to package leads: Reviews schematic diagram or work order to determine bonding specifications. Turns dials to set bonding machine temperature controls and to regulate wire feeding mechanism. Mounts spool of wire onto holder and inserts wire end through guides, using tweezers. Positions semiconductor package into magazine of automatic feed mechanism, and observes package, using microscope or equipment display screen, to ensure connections to be bonded are aligned with bonding wire. Adjusts alignment as necessary. Activates machine that automatically bonds wire to specified connections on semiconductor package leads. Removes packages from bonding machine and places packages in work tray. May test tensile strength of bonded connections, using testing equipment. May locate connections and bond wire to connect circuitry of hybrid circuits, using precision-bonding machine.

Nothing in either description lends any support to plaintiff's assertion that frequent overhead reaching is a job requirement.

Plaintiff also contends that he cannot perform the final assembler and semi-conductor bonder positions because they require the "full range" of sedentary lifting. But the administrative law judge found that plaintiff *could* perform the full range of sedentary lifting, which is up to 10 pounds occasionally and up to five pounds frequently. 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."). I cannot fathom why plaintiff, who is represented by lawyers who are experts in handling social security cases, makes the assertion that sedentary work requires lifting up to 10 pounds

20

frequently and 20 pounds occasionally.  Plt.'s Br. In Supp. of Mot. for Summ. Judg., dkt. #7, at 21.  The weight limits that plaintiff cites are for light work, not sedentary work.  20 C.F.R. § 404.1567(b).

In sum, plaintiff's contention that he cannot perform the final assembler and semi-conductor bonder jobs identified by the vocational expert is founded upon inaccurate conclusions about what those jobs entail.  Accordingly, his arguments fail to show that the administrative law judge erred in accepting the vocational expert's testimony.  Insofar as plaintiff makes the additional argument that the vocational expert's testimony was flawed because it did not account for plaintiff's limitations in neck flexion or concentration, I have already found that substantial evidence supports the administrative law judge's conclusion that such limitations were not warranted.  There is no basis for overturning the administrative law judge's conclusion at step five of the sequential evaluation process.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, denying plaintiff Barry Christianson's application for Disability Insurance

Benefits under Title II of the Social Security Act, is AFFIRMED.

The clerk of court is directed to enter judgment in favor of defendant and close this

case.

Entered this 6th day of February, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

22